CHIEF JUDGE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-215-RSM |
| Plaintiff, | MOTION TO SUPPRESS (Physical Evidence and Statements) |
| vs. | Noted for:  August 6, 2021 |
| ELLEN B. REICHE, | [Oral Argument, Evidentiary Hearing Requested] |
| Defendant. | |

Ellen Reiche, through counsel, moves for an order suppressing physical evidence recovered from a warrantless search of a grocery bag located at the scene of the arrest. Additionally, the defense moves for an order suppressing alleged statements Ms. Reiche made after she was functionally under arrest but prior to police reading the *Miranda* rights.  An evidentiary hearing is necessary to resolve important factual disputes relevant to this motion.

## I.    BACKGROUND

On November 28, 2020, in the late evening, BNSF railroad police received a motion alert from a game camera focusing on the nearby tracks in Whatcom County. Deputy Tyler Nies reviewed the footage and saw a trespasser on the railroad tracks. Deputy Nies also observed either another person kneeling on the tracks or perhaps an "item sitting on the tracks."  The time stamp of this footage was 11:24pm.  Exhibit 1. Deputy Nies then contacted the Whatcom County Sheriff's Office to investigate.

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1    After notifying the Sheriff's office, Deputy Nies noticed a "track indication"

2    appear and disappear from the dispatch screen at approximately 11:41pm.  Deputy Nies

3    will testify that a "track indication" signal means the track is either occupied or

4    obstructed.  Deputy Nies will also testify that prior to this event, there had been several

5    discoveries of "shunts" or "shunting devices" along that railway corridor over the past

6    year from January of 2020.  A "shunt" or "shunting device" will cause the railroad

7    signals to indicate that a block of tracks up ahead is occupied.  A block of tracks is an

8    area of railroad tracks that extends anywhere from 2 to 10 miles depending on the

9    topography or track profile.  Normally, a train performs this shunting activity in that

10   when it crosses over or stops at a particular block of tracks, the signals located at the

11   prior block (from a few miles behind the train) will indicate a red signal telling other

12   trains that the block ahead is now occupied.  A shunting device is created by connecting

13   wire, or some other electrical conduit, to the tracks to make the signals believe that the

14   area, or block, is now occupied when in fact it is not.

15   The following facts and time sequence will need to be determined at an

16   evidentiary hearing.  The first to arrive on scene was Whatcom County Sheriff deputy

17   "D. Chambers."  Deputy Chambers identified the two defendants in the area by the

18   tracks and determined that the two were trespassing.  He also noticed that Ms. Reiche

19   was carrying a grocery bag.  Exhibit 2.  Upon arrival, Deputy Chambers allegedly

20   observed the two defendants trying to run from the area but then demanded that they

21   halt.  He then identified himself as a Sheriff's officer and ordered them to come to him.

22   Both defendants complied with the deputy's commands.  The grocery bag was then

23   placed on the ground.

24   Deputy Chambers noted in his report that he specifically told the two defendants

25   that they were trespassing on BNSF property, that he needed their identification, and

26

MOTION TO SUPPRESS - 2
(*USA v. Reiche* / CR20-215-RSM)

that they needed to stay put.  The defense asserts that at this point, Ms. Reiche was not free to leave and under these circumstances she was in a custodial environment.

Despite the custodial encounter, Deputy Chambers did not Mirandize the defendants at this time.  Instead, Deputy Chambers started questioning the two defendants.  Because co-defendant Brooks has pled guilty, the questions presented to Ms. Reiche and her responses are only relevant for this motion.  In this instance, Deputy Chambers asked Ms. Reiche about what was inside a grocery bag that was in her possession prior to the encounter but then placed on the ground once she was detained.  In response to Deputy Chambers' questions, Ms. Reiche made statements about what was inside that bag.  However, at no point prior to asking these questions did Deputy Chambers advise Ms. Reiche that she has the right to remain silent and that anything she says could be used against her.

Shortly after this custodial encounter, other law enforcement officers and agents arrived.  These agents and law enforcement officers discovered a "shunt" underneath the rock ballast in between the railroad tracks.  After the shunt was discovered, both defendants were placed in handcuffs and taken to the Sheriff's patrol car.  At this point, Deputy Chambers read Ms. Reiche her *Miranda* warnings and asked if she understood.  Ms. Reiche immediately invoked her rights and asked for a lawyer.  Subsequently, deputy chambers searched the grocery bag that was sitting on the ground.  According to Deputy Chambers' report, "[i]n the paper bag I observed black wire, gloves, a cordless drill with brass brush bit, scissors, and tape."  The defense asserts that at the time of the search, neither Ms. Reiche, nor the co-defendant, were within reaching distance of the bag and that there was no reasonable possibility of gaining access to the bag while in handcuffs at the police car.

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

## II.   ARGUMENT

### A. The custodial statements made prior to the *Miranda* warnings must be suppressed.

An evidentiary hearing is necessary to determine whether Ms. Reiche was in custody at the time she responded to Deputy Chambers' questions pre-Miranda.  *See United States v. Arbolaez*, 450 F.3d 1283, 1292 (11th Cir. 2006) *citing Jackson v. Denno*, 378 U.S. 368, 380 (1964) (imposing a hearing requirement when a defendant objects to admission of a confession that the defendant claims was coerced).

### 1)   *Once the law enforcement deputy detained the defendant for trespassing, the deputy had an obligation to Mirandize the defendant.*

Law enforcement must recite the *Miranda* warnings to any suspect in custody before initiating questions that could potentially lead to an incriminating response or other response that could be used against the suspect.  *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).  To be "in custody" does not necessarily require that the suspect be taken into police custody or placed in handcuffs.  *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008).  See also *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987) (suspect who was not held in handcuffs was still considered to be "in custody" given the surrounding circumstances and law enforcement's efforts to interrogate the suspect).  In cases such as Ms. Reiche, where she was not formally taken into police custody at the time of the questioning, "a suspect is nevertheless considered 'in custody' for purposes of *Miranda* if the suspect has been 'deprived of his freedom of action in any significant way.'"  *Id.*, citing *Miranda*, at 444.  The analysis requires

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

the court to consider the totality of the circumstances and ask whether a reasonable person in those circumstances would have felt she was not at liberty to leave. *Id.* In other words, "restraint" may be inferred from the surrounding circumstances thereby requiring law enforcement to recite the *Miranda* warnings. *Id.*, at 1085-86.

The sure way to determine whether a suspect is really in custody for *Miranda* purposes is to check whether law enforcement informed the suspect that she was not under arrest and was free to leave at any time. *Id.*, at 1087. Such communications "greatly reduces the chance that a suspect will reasonably believe he [or she] is in custody." *Id.*

Once law enforcement detains a suspect in preparation for questioning or interrogation, "there is rarely, if ever, a legitimate reason to delay giving a *Miranda* warning . . ." *United States v. Williams*, 435 F.3d 1148, 1159 (9th Cir. 2006). The test for whether a suspect is subject to interrogation, for purposes of *Miranda*, is an objective one, meaning the subjective intent of the police is not conclusive. *United States v. Williams*, 842 F.3d 1143, 1147 (9th Cir. 2016). One way to determine whether law enforcement's questioning is a pretext for an interrogation is to assess whether the question is designed to elicit a response that can be used against the suspect in court. *Id.*, at 1148.

In the instant case, an evidentiary hearing is needed to establish that Ms. Reiche was in custody and that Deputy Chambers' questions were intended to elicit a response that would be used against Ms. Reiche in court. Specifically, when Deputy Chambers arrived in the area he saw the two defendants. Deputy Chambers is also expected to

MOTION TO SUPPRESS - 5
(*USA v. Reiche* / CR20-215-RSM)

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

testify that the two attempted to run away but halted once he identified himself as the police and ordered them to stay where they were.

Once Deputy Chambers identified himself as a Sheriff's officer and ordered Ms. Reiche to stop and come to him, Ms. Reiche was in custody.  A reasonable person under these circumstances would not feel free to leave.  In fact, Deputy Chambers expressly placed a restraint on Ms. Reiche when he ordered her to stop and come directly to Chambers.  Ms. Reiche relented by complying with this command and as a result she was now in a custodial environment even though Deputy Chambers had not yet placed her in handcuffs.  Accordingly, at this point, Deputy Chambers had a duty to *Mirandize* Ms. Reiche before questioning her about what she was doing trespassing on BNSF property and what was in the bag that she was carrying.

2)  *Deputy Chambers' questions were designed to elicit an incriminating response from Ms. Reiche.*

While in this custodial environment, where Ms. Reiche was not free to leave, Deputy Chambers asked Ms. Reiche what was inside the grocery bag that he observed her holding prior to the seizure.  Deputy Chambers will testify that he was suspicious of the two not only because of this grocery bag being in Ms. Reiche's possession, but also because the two were dressed in all black with fresh dirt on their clothes while trespassing on BNSF property at a very late hour in the night.  Under these circumstances, while also in a custodial setting, Ms. Reiche was subject to interrogating questions because the questions had the goal of eliciting responses that could be used against Ms. Reiche in court.  From Deputy Chambers' perspective, he had just caught

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1
2
3

Ms. Reiche trespassing on BNSF property in the middle of the night while wearing all black clothing and carrying a suspicious bag.  Asking a question about what was inside the bag could only serve one purpose—to elicit an incriminating response.

4
5
6
7
8

The constitutionally correct approach would have been for Deputy Chambers to first advise Ms. Reiche that anything she says can be used against her in court and that she has the right to remain silent.  Then, it would have been appropriate for Deputy Chambers to inquire about the bag and its contents.

9
10
11
12
13
14

The subjective intentions of Deputy Chambers is not dispositive.  *Williams*, 842 F.3d at 1147.  Considering the surrounding circumstances objectively, Deputy Chambers' questioning served a purpose similar to an interrogation—*to get Ms. Reiche to say something that could be used against her in court*.  Ms. Reiche was not *Mirandized* prior to the questioning.  Therefore, her responses must be suppressed.

15
16
17

**B. The warrantless search of the grocery bag was not a lawful search incident to arrest.  The appropriate remedy for this Fourth Amendment violation is to suppress the bag and its contents from being admitted at trial.**

18
19
20
21
22
23

A search incident to arrest is a well-established exception to the Fourth Amendment's warrant requirement.  *See Arizona v. Gant*, 556 U.S. 332, 338 (2009).  This exception allows an arresting officer to search the person of an arrested suspect together with the area "within his immediate control".  *Chimel v. California*, 395 U.S. 752, 763 (1969).  This area has been defined as "the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

24
25
26

In evaluating the reasonableness of a search incident to arrest, the court must examine two things:  First, whether the area searched really was within the arrestee's "immediate control."  Second, whether there were any subsequent or intervening

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

events that would make the search unreasonable.  *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010).  Similarly, the search must be "spatially and temporally incident to the arrest."  *United States v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014).

In *Maddox*, police stopped the defendant for reckless driving.  The police ordered the defendant out of his car and placed him in handcuffs.  The arresting officer searched the defendant's pockets and recovered cash.  The officer then went to the vehicle and recovered the defendant's keys that contained a vial on the keychain.  There was no dispute that the defendant was in actual possession of the key chain and vial just prior to being ordered out of the vehicle.   The officer unscrewed the vial and discovered methamphetamine.  The police attempted to justify the search as a search incident to a lawful arrest.  *United States v. Maddox*, 614 F.3d at 1047-1048.  The trial court disagreed and suppressed the evidence.

The Ninth Circuit affirmed the suppression order and ruled that the search of the key chain vial was not justified under the search incident to arrest exception:

> [The defendant] was handcuffed in the back of the squad
> car, incapable of either destroying evidence or presenting
> any threat to the arresting officer.  While the key chain was
> within Maddox's immediate control while he was arrested,
> subsequent events—namely Officer Bonney's handcuffing
> of Maddox and placing Maddox in the back of the patrol
> car—rendered the search unreasonable.

*Id.* at 1048.

This reasoning has been followed by other circuits as well.  Relying on Ninth Circuit law, the Third Circuit similarly found it unreasonable to justify a search incident to arrest where the suspect "was handcuffed behind his back while lying face down on the floor, and 'covered' by two armed police officers" when the police searched a bag that the defendant possessed just prior to being taken down by police.  *United States v. Myres*, 308 F.3d 251, 267 (3rd Cir. 2002), citing *United States v. Hudson*, 100 F.3d

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1409, 1419 (9th Cir. 1996).  *Cf. United v. Johnson*, 18 F.3d 293, 295 (5th Cir. 1994) (defendant's open briefcase on chair approximately six feet from desk where defendant was sitting at time officers executed arrest warrant was not within defendant's area of immediate control at time it was searched), *and United States v. Holbrook*, 2016 WL 454843 (W.D.WA, Feb. 5, 2016)(shopping cart that was in defendant's possession just prior to arrest was outside her control at the time of the search incident to arrest for shoplifting/theft).

In Ms. Reiche's case, prior to searching the grocery bag, Deputy Chambers placed Ms. Reiche, and the co-defendant, in handcuffs and moved them both to the police car.  At this time, neither Ms. Reiche, nor Brooks, had access to the grocery bag. Because they could not gain access to the bag, a subsequent warrantless search of the bag would be unreasonable and would not meet the requirements of a lawful search incident to arrest. Therefore, Deputy Chambers needed a warrant before he could go into the bag to find out what was inside.  For these reasons, the bag and its contents must be suppressed.

## III.    CONCLUSION

The defense requests an evidentiary hearing to establish the facts needed to support the motion to suppress both the statements of the defendant and the physical evidence of the bag and its contents.  Following this requested evidentiary hearing, the defense moves for an order suppressing Ms. Reiche's statements together with the physical evidence of the bag and its contents.

DATED this 23rd day of July, 2021.

Respectfully submitted,

s/ *Jesse Cantor*
Assistant Federal Public Defender
Attorney for Ellen Reiche

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**