Chief District Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

ELLEN BRENNAN REICHE,

                    Defendant.

Case No.  CR 20-215 RSM

OPPOSITION TO MOTION TO
SUPPRESS

Noted for:  August 13, 2021

Defendant Ellen Brennan Reiche moves to suppress evidence found in a grocery bag she was carrying at the time of her arrest as well as statements she made before her arrest. Dkt. 38. Her motion lacks merit. She made her incriminating statements to the deputies before she was in custody. And the search of the grocery bag was a proper search incident to arrest, and even if it were not, the wire, drill, and other items inside were in plain view. The Court should deny her motion.

## FACTS

Reiche is charged with one count of violence against a railroad carrier, and conspiring and attempting to do the same, in violation of 18 U.S.C. §§ 1992(a)(5), (a)(10), (c)(1), and 2. Dkt. 15. The indictment alleges that she impaired the operation of a railroad signal system by placing a wire shunt across Burlington Northern Santa Fe ("BNSF") railroad tracks. *Id*.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The core facts needed to resolve Reiche's motion, as taken from the arrest reports and

2  other discovery in this case, are not in dispute. On November 28, 2020, near midnight, a

3  BNSF police officer received an alert from a camera placed along the BNSF Bellingham

4  Subdivision tracks in Whatcom County. An image from the camera showed one person

5  standing and possibly a second person kneeling over the tracks. BNSF property is private

6  and closed to the public. The officer contacted the Whatcom County Sheriff's Office, which

7  dispatched deputies to the scene.

8    The BNSF officer was especially concerned about these trespassers because there had

9  been dozens of incidents of vandalism and shunting on railroad tracks in this area and nearby

10  areas since January 2020. A shunt refers to a wire placed between one rail and the other.

11  Once connected, the shunt can interfere with the train signaling system and related systems,

12  including railroad crossings. In one of the prior incidents, on October 11, 2020, a shunt

13  caused a train to engage emergency brakes. The sudden and unexpected application of the

14  brakes caused a draw bar on one of the rail cars to break, separating the train in two, which

15  could have led to a derailment. Twelve cars in that train carried hazardous materials.

16    Deputies Chambers and Streubel responded to the scene on November 28, 2020. They

17  approached the area from different sides. Deputy Chambers used a light from his patrol

18  vehicle and spotted two black objects approximately 100 yards from his location. He realized

19  these objects were people crouched down on the ground between the rails of the tracks. He

20  observed them get up and start to flee, at which point he identified himself and ordered them

21  to stop. They complied. As Deputy Chambers got closer, he saw that the two individuals—

22  later identified as Reiche and co-defendant Samantha Brooks—were dressed in all black and

23  had dirt on their pants and the fronts of their shirts. Reiche was holding a paper grocery bag.

24    Deputy Chambers identified and ran records checks on Reiche and Brooks. Deputy

25  Steubel arrived and assisted. The deputies had Reiche and Brooks stay put while they

26  investigated the situation. In a conversation with the deputies, Reiche and Brooks said they

27  were on the tracks looking for Brooks' lost keys. They said they had been in the area earlier

28  and had dropped a set of keys, so they had come back to look for them. This statement was

OPP'N TO MOT. TO SUPPRESS
NO. CR 20-215 RSM - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

odd for several reasons, including that they were not carrying flashlights or any other source of light, and Brooks appeared to have her keys on her person. Deputy Chambers asked Reiche what was in the paper bag she was holding, and she responded that it was leftovers from Thanksgiving dinner. She said they had worried they might get hungry while looking for the keys. Incongruously, Brooks later said she does not celebrate Thanksgiving, and Reiche nodded in agreement as Brooks said that.

An agent from the Federal Bureau of Investigation's Joint Terrorism Task Force arrived on the scene and explained to Deputy Chambers the recent issues with shunting in the area. The agent explained that the wires are frequently hidden under rocks. Deputy Chambers went to the place along the tracks where he had spotted the defendants, and he saw a patch of rocks that had no frost, while the surrounding rocks and rails were covered in frost, suggesting that those rocks had recently been moved. In that spot he discovered a black wire buried under the rocks connecting the two rails together. A BNSF representative later explained that this shunt could have interfered with a nearby railroad crossing, although it was operational only momentarily.

The deputies decided to arrest Reiche and Brooks for malicious injury to railroad property and second-degree criminal trespassing. The deputies handcuffed the defendants and read them their *Miranda* rights. Reiche invoked her right to counsel. The bag that Reiche had been holding until being handcuffed was placed on the ground next to her. The deputies could see inside through the open top that it contained black wire, a cordless drill with a brass brush bit, and other items. A wire brush is frequently used when making a shunt to increase the adhesion of the wire to the rails.[1]

---

[1] Even if the deputies had not seen inside and searched the paper bag on the scene, it might have been inventoried as part of booking for arrest. This eventuality, which can be explored at an evidentiary hearing if needed, would support a finding of inevitable discovery. *See, e.g.*, *United States v. Brown*, No. 17-CR-058, 2017 WL 8941247, at *10 (D. Nev. Aug. 14, 2017) ("the firearm would have been discovered inevitably through lawful inventory procedures"). But there are other independent bases to deny Reiche's motion.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1                                           **ARGUMENT**

2 **I.**     **Reiche's Pre-Arrest Statements Are Admissible**

3      **A.**     **Applicable Law**

4      *Miranda* mandates "a set of prophylactic measures designed to safeguard the

5 constitutional guarantee against self-incrimination." *J.D.B. v. North Carolina*, 564 U.S. 261,

6 269 (2011). Under *Miranda*, when police question a person in custody, "He must be warned

7 prior to any questioning that he has the right to remain silent, that anything he says can be

8 used against him in a court of law, that he has the right to the presence of an attorney, and

9 that if he cannot afford an attorney one will be appointed for him prior to any questioning if

10 he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). In addition, "the prosecution

11 at trial" must show that police gave these four "warnings" and that the person "waived" his

12 rights before it may use any statement made by the person while in custody "against him."

13 *Id.*

14      The government may not use a statement taken in violation of *Miranda* "at trial in

15 [its] case in chief." *Oregon v. Elstad*, 470 U.S. 298, 317 (1985); *see also United States v.*

16 *Gomez*, 725 F.3d 1121, 1125-26 (9th Cir. 2013) ("Statements obtained in violation of

17 *Miranda* generally are inadmissible in the government's case-in-chief."). The government

18 may, however, use a statement taken in violation of *Miranda* to impeach the defendant. *See*

19 *id.* at 226; *United States v. Rosales-Aguilar*, 818 F.3d 965, 970 (9th Cir. 2016).

20      "[P]olice officers are not required to administer *Miranda* warnings to everyone whom

21 they question." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). *Miranda*

22 warnings must be given only before a "custodial interrogation." *Miranda*, 384 U.S. at 444.

23 "[C]ustodial interrogation . . . mean[s] questioning initiated by law enforcement officers after

24 a person has been taken into custody or otherwise deprived of his freedom of action in any

25 significant way." *Id*. The test for custody "examine[s] all of the circumstances surrounding

26 the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or

27 restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury*

28 *v. California*, 511 U.S. 318, 322 (1994) (internal quotation marks and citation omitted). The

OPP'N TO MOT. TO SUPPRESS
NO. CR 20-215 RSM - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  officers' "subjective views" do not figure into this analysis. *Id.* at 323. Instead, the Ninth

2  Circuit has identified the following non-exhaustive list of relevant factors: "(1) the language

3  used to summon the individual; (2) the extent to which the defendant is confronted with

4  evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the

5  detention; and (5) the degree of pressure applied to detain the individual." *United States v.*

6  *Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001).

7  　　　**B.　　Reiche Was Not in Custody When She Made the Challenged Statements**

8  　　　Reiche made several statements before her arrest that are incriminating because of

9  their implausibility. She said, for example, that the paper bag she was carrying contained

10  leftover Thanksgiving dinner. She now asks the Court to suppress all her statements, arguing

11  that the deputies violated her *Miranda* rights. Her argument fails.

12  　　　When Reiche made the challenged statements, the deputies were only beginning to

13  sort out the situation that night. They had briefly detained Reiche and Brooks, based on

14  reasonable suspicion of criminal activity, to "investigate the circumstances that provoke

15  suspicion." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). It was a quintessential *Terry*

16  stop at this stage, and given the "comparatively nonthreatening character of detentions of this

17  sort," the Supreme Court has never "suggest[ed] . . . that Terry stops are subject to the

18  dictates of Miranda." *Id.* at 440. A routine investigatory detention is simply not "custody" for

19  *Miranda* purposes.

20  　　　All of the surrounding circumstances confirm that the deputies' conversation with

21  Reiche was not a custodial interrogation. For much of the time, there were only two

22  members of law enforcement at the scene. The conversation took place outside. Although

23  Reiche was being temporarily detained, the deputies did not tell her she was under arrest or

24  handcuff her (that is until they discovered the shunt and actually arrested her, at which point

25  they promptly gave the *Miranda* warnings). The deputies' questioning was polite and

26  conversational. And Reiche and Brooks remained together rather than being separated from

27  one another. For these reasons and more, *Miranda* warnings were not required.

28

OPP'N TO MOT. TO SUPPRESS
NO. CR 20-215 RSM - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       Reiche argues she was in custody from the first moments of the encounter when she

2   tried to flee the scene and Deputy Chambers ordered her "to stop." Dkt. 38 at 6. But the

3   cases she cites to support that argument are distinguishable or inapposite. In one of them,

4   *United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008), the Ninth Circuit held that the

5   defendant was in custody for *Miranda* purposes because eight law enforcement officers

6   entered his home, physically isolated him from others, and questioned him "in the dark

7   recess of the back storage room." *Id.* at 1087. And in *United States v. Beraun-Panez*, 812

8   F.2d 578 (9th Cir. 1987), which Reiche also cites, officers questioned the defendant with

9   "relentlessness" and "psychological coercion," and deliberately isolated him from a co-

10  worker. *Id.* at 580-82. Neither *Craighead* nor *Beraun-Panez* resembles this case.

11      In addition, Reiche cites *United States v. Williams*, 435 F.3d 1148 (9th Cir. 2006), but

12  the question in that case involved the timing of the *Miranda* warnings during an interrogation

13  of a suspect in custody. Similarly, in another case she cites of the same name, *United States*

14  *v. Williams*, 842 F.3d 1143 (9th Cir. 2016), the issue was whether booking questions asked

15  of a defendant arrested for murder qualified as "interrogation" under *Miranda*. *Id.* at 1145-

16  46. These cases do not speak to the key question here, which is whether Reiche was in

17  custody in the first place. For all the reasons noted, she was not in custody. Thus, no matter

18  whether the deputies' questions would constitute "interrogation," her *Miranda* claim fails.[2]

19

20

21

22  ———————————

23  [2] Reiche argues that "[a]n evidentiary hearing is necessary" to resolve her *Miranda* claim, Dkt. 38 at 4, but her authority for this argument is inapposite. She cites *United States v.*

24  *Arbolaez*, 450 F.3d 1283 (11th Cir. 2006), a case in which the defendant was "in custody for the purposes of *Miranda*" and the question was whether the defendant knowingly and

25  intelligently waived his *Miranda* rights. *Id.* at 1292. The Eleventh Circuit wrote that the district court should have held a hearing to determine the validity of the waiver and related

26  issues before admitting the defendant's confession. *Id*. Here, by contrast, undisputed facts

27  establish that Reiche was not in custody when she made the challenged statements—and that

28  resolves her *Miranda* claim.

**II.     The Search of the Paper Bag Was Lawful**

   **A.     Applicable Law**

   The "'search incident to arrest' principle" provides that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 762-63 (1969). The arresting officer also may "search for and seize any evidence . . . to prevent its concealment or destruction." *Id.* at 763. The permissible scope of a search incident to arrest extends to "the arrestee's person and the area within his immediate control." *Davis v. United States*, 564 U.S. 229, 232 (2011) (internal quotation marks and citation omitted). The "arrestee's person" includes items on his or her person, such as a cigarette package. *United States v. Robinson*, 414 U.S. 218, 236 (1973).

   The propriety of a search incident to arrest does not turn on a "case-by-case adjudication" of the danger to the arresting officer or the likelihood that the officer would find evidence. *Id.* at 235; *see also Birchfield v. North Dakota*, 136 S. Ct. 2160, 2176 (2016) (affirming that "[t]he permissibility of" searches incident to arrest "does not depend on whether a search of a *particular* arrestee is likely to protect officer safety or evidence"). Instead, the question is whether the arrest is lawful. *Robinson*, 414 U.S. at 235. A lawful arrest means a search incident to that arrest is lawful too. *Id.* As the Supreme Court said in *Robinson*, "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.*; *see also Virginia v. Moore*, 553 U.S. 164, 177 (2008) (affirming that officers may perform a search incident to a lawful arrest, and that an arrest is lawful if based on probable cause).

   **B.     The Search of the Bag Was Incident to Reiche's Lawful Arrest**

   Deputies Chambers and Streubel lawfully arrested Reiche based on probable cause to believe she had committed multiple crimes, including malicious injury to railroad property. As part of the arrest, they searched the paper grocery bag she had been holding throughout the encounter. This was a proper search incident to the lawful arrest. The bag was property

1    "immediately associated with the person of the arrestee" because Reiche was holding it until

2    more or less the moment of her arrest. *United States v. Chadwick*, 433 U.S. 1, 15 (1977); *see*

3    *Robinson*, 414 U.S. at 236.[3] And the search of the bag occurred close in time to her arrest.

4    *See United States v. Caseres*, 533 F.3d 1064, 1073 (9th Cir. 2008) (reviewing cases on the

5    contemporaneousness of search and arrest); *cf. United States v. Monclavo-Cruz*, 662 F.2d

6    1285, 1288 (9th Cir. 1981) (search of purse incident to arrest not proper where it occurred

7    "an hour later at the station"). Nothing more was required to make this a valid search

8    incident to arrest.

9         Reiche argues that this was in fact not a valid search incident to arrest, principally

10   relying on *United States v. Maddox*, 614 F.3d 1046 (9th Cir. 2010) to support her argument.

11   But *Maddox* involved materially different facts. In that case, after arresting a defendant

12   during a traffic stop, handcuffing him, and placing him in the back of a patrol car, the officer

13   returned to the defendant's vehicle, seized his keychain, and opened a metal vial that was

14   hanging from the keychain. *Id.* at 1047. The Ninth Circuit held that this search of the vial

15   was improper because, although the keychain had been within the defendant's "immediate

16   control while he was arrested," the "subsequent events—namely [the officer's] handcuffing

17   of [the defendant] and placing [him] in the back of the patrol car—rendered the search

18   unreasonable." *Id.* at 1048. Here, by contrast, the grocery bag was physically in Reiche's

19   possession at the time of arrest, rather than simply nearby. This puts the search in the

20   *Robinson* line of cases, under which the defendant's proximity to the searched item at the

21   time of the search does not matter. *See United States v. Hill*, No. CR 10-261, 2011 WL

22

23   _____

24   [3] Even if the bag were seen as "luggage" rather than property "immediately associated with
     the person of the arrestee," it was still subject to search for being in an area within Reiche's

25   immediate control. *Chadwick*, 433 U.S. at15; *see United States v. Andersson*, 813 F.2d 1450,

26   1455 (9th Cir. 1987) (affirming search incident to arrest of suitcase sitting on bed next to
     where arrestee was standing); *United States v. Maldonado-Espinosa*, 968 F.2d 101, 104 (1st

27   Cir. 1992) ("government agents, when arresting a person, may constitutionally search an

28   arrested person's nearby carry-on bag").

1  90130, at *8 (N.D. Cal. Jan. 10, 2011) (distinguishing *Maddox* because searched item was
2  "found on [the defendant's] person").[4]

3      Reiche also relies on a decision from this district, *United States v. Holbrook*, No. 15-
4  CR-5392, 2016 WL 454843 (W.D. Wash. Feb. 5, 2016), but *Holbrook* actually supports the
5  government's argument. In *Holbrook*, which involved shoplifting and other charges, officers
6  arrested the defendant and searched a shopping cart that was about five feet from where she
7  was seated (with an officer standing in between), and also searched a bag and other personal
8  possessions that were on a couch next to the defendant. *Id.* at *2-5. The *Holbrook* decision
9  distinguished between these two searches, finding that the search of the personal possessions
10  was proper while the search of the cart was not, because the "personal possessions were
11  within her immediate control" and searched contemporaneously to her arrest. *Id*. Here, the
12  search of Reiche's bag is more closely analogous to the search of the defendant's bag in
13  *Holbrook* rather than the shopping cart. The bag was within an area of Reiche's immediate
14  control (in fact, even more than that, it was on her person). For this reason, as in *Holbrook*,
15  the search of the grocery bag incident to Reiche's arrest was valid.

16      **C.**    **The Items Inside the Bag Were in Plain View**

17      Even if the search of the grocery bag were not a proper search incident to arrest, the
18  deputies were permitted to seize the items inside because those items were in plain view. The
19  deputies could see into the bag through the opening at the top without manipulating the bag.
20  Having just found a shunt on the railroad tracks, it was immediately apparent that the wire,
21  drill, and other items inside the bag were incriminating evidence. The deputies therefore

22  _____

23  [4] Even if the proximity did matter here, the arrest reports indicate that the deputies looked
24  inside the grocery bag as they arrested Reiche and before placing her in a patrol car. Reiche
   asserts in her motion that she was "moved . . . to the police car" prior to the search of the
25  bag, Dkt. 38 at 9, but this claim is not supported by the arrest reports or other discovery in
26  the case, and Reiche has not submitted a declaration or pointed to any other evidence to back
   it up. In any event, this dispute is of no moment because her proximity to the bag is
27  irrelevant, and for the additional reason that the items in the bag were in plain view, as noted
28  below.

OPP'N TO MOT. TO SUPPRESS
NO. CR 20-215 RSM - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   could seize those items under the plain view exception to the warrant requirement. *See, e.g.,*

2   *United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996).

3                                    **CONCLUSION**

4          For all these reasons, the Court should deny Reiche's motion to suppress.

5

6   Dated:  August 6, 2021.                    Respectfully submitted,

7
                                               TESSA M. GORMAN
8                                              Acting United States Attorney

9                                              /s/  Philip Kopczynski
10                                             PHILIP KOPCZYNSKI
                                               SOK JIANG
11                                             Assistant United States Attorneys
                                               United States Attorney's Office
12                                             700 Stewart Street, Suite 5220
                                               Seattle, Washington 98101-1271
13                                             Phone:  206-553-7970
                                               Fax:  206-553-4073
14                                             philip.kopczynski@usdoj.gov
                                               sok.jiang@usdoj.gov
15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP'N TO MOT. TO SUPPRESS
NO. CR 20-215 RSM - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970