UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELLEN BRENNAN REICHE,<br><br>Defendant. | NO. CR20-215 RSM<br><br>**GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Philip Kopczynski and Sok Tea Jiang, Assistant United States Attorneys for said District, respectfully submits this trial brief.

## INTRODUCTION

Defendant Ellen Brennan Reiche is charged with one count of Violence Against Railroad Carriers, and conspiring and attempting to do the same, in violation of Title 18, United States Code, Sections 1992(a)(5), (a)(10), (c)(1), and 2. Dkt. 15. The indictment alleges that she impaired the operation of a railroad signal system by placing a wire shunt across Burlington Northern Santa Fe ("BNSF") railroad tracks. *Id*.

Trial is scheduled to commence on August 30, 2021. The government anticipates calling up to 10 witnesses in its case in chief, and estimates that its case in chief will last approximately one day, depending on the length of cross-examination.

*United States v. Reiche*, No. CR 20-215 RSM - 1
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

AUSA Sok Tea Jiang will conduct the voir dire. AUSA Philip Kopczynski will give the opening statement. AUSA Jiang will give the closing argument, and AUSA Kopczynski rebuttal.

## SUMMARY OF THE EVIDENCE

The government expects to offer the following evidence at trial:

### *The Incident*

On November 28, 2020, near midnight, BNSF Deputy Chief Tyler Nies received an alert from a camera placed along the BNSF Bellingham Subdivision tracks in Whatcom County. An image from the camera showed one person standing and possibly a second person kneeling over the tracks. BNSF property is private and closed to the public. Deputy Chief Nies contacted the Whatcom County Sheriff's Office, which dispatched deputies to the scene.

Deputy Chief Nies was especially concerned about these trespassers because there had been over 40 incidents of vandalism and shunting on railroad tracks in this area and nearby areas since January 2020. A shunt refers to a wire placed between one rail and the other. Once connected, the shunt can interfere with the train signaling system and related systems, including railroad crossings. In one of the prior incidents, on October 11, 2020, a shunt caused a train to engage emergency brakes. The sudden and unexpected application of the brakes caused a draw bar on one of the rail cars to break, separating the train in two, which could have led to a derailment. Twelve cars in that train carried hazardous materials.

Whatcom County Sheriff's Deputies Dane Chambers and Austin Streubel responded to the scene on November 28, 2020. They approached the area from different sides. Deputy Chambers used a light from his patrol vehicle and spotted two black objects approximately 100 yards from his location. He realized these objects were people crouched down on the ground between the rails of the tracks. He observed them get up and start to flee, at which point he identified himself and ordered them to stop. They complied. As Deputy Chambers got closer, he saw that the two individuals—later

*United States v. Reiche*, No. CR 20-215 RSM - 2
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identified as Reiche and co-defendant Samantha Brooks—were dressed in all black and had dirt on their pants and the fronts of their shirts. Reiche was holding a paper grocery bag.

Deputy Chambers identified and ran records checks on Reiche and Brooks. Deputy Steubel arrived and assisted. The deputies had Reiche and Brooks stay put while they investigated the situation. In a conversation with the deputies, Reiche and Brooks said they were on the tracks looking for Brooks' lost keys. They said they had been in the area earlier and had dropped a set of keys, so they had come back to look for them. They were not carrying flashlights or any other source of light, and Brooks appeared to have her keys on her person. Deputy Chambers asked Reiche what was in the paper bag she was holding, and she responded that it was leftovers from Thanksgiving dinner. She said they had worried they might get hungry while looking for the keys. Incongruously, Brooks later said she does not celebrate Thanksgiving, and Reiche nodded in agreement as Brooks said that.

Task Force Officer Lucas Shulman from the Joint Terrorism Task Force arrived on the scene and explained to Deputy Chambers the recent issues with shunting in the area. TFO Shulman explained that the wires are frequently hidden under rocks. Deputy Chambers went to the place along the tracks where he had spotted the defendants, and he saw a patch of rocks that had no frost, while the surrounding rocks and rails were covered in frost, suggesting that those rocks had recently been moved. In that spot he discovered a black wire buried under the rocks connecting the two rails together.

The deputies decided to arrest Reiche and Brooks for malicious injury to railroad property and second-degree criminal trespassing. The deputies handcuffed the defendants and read them their *Miranda* rights. Reiche invoked her right to counsel. The bag that Reiche had been holding until being handcuffed was placed on the ground next to her. The deputies could see inside through the open top that it contained black wire, a cordless drill with a brass brush bit, and other items. A wire brush is frequently used when making a shunt to increase the adhesion of the wire to the rails.

*United States v. Reiche*, No. CR 20-215 RSM - 3
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*The Impact of Reiche's Shunt on the BNSF Railway Signal System*

The government expects to offer testimony from Eric Shaffstall, a BNSF signal supervisor. Although much or all of what he will say may be lay testimony, the government has noticed him as an expert witness in an abundance of caution. The government has disclosed his identity and qualifications, as well as the substance of his testimony, to the defense. He is expected to testify about how the BNSF railway signal system generally operates, including: (*i*) how the signal system keeps track of where trains are on the track to avoid potential collisions and derailments; (*ii*) how crossing lights and bars are activated; and (*iii*) the potential consequences caused by a train's use of its emergency brakes.

Shaffstall is also expected to testify about how the shunt recovered on the night of Reiche's arrest impacted the signal system, including that: (*i*) this shunt briefly caused the signal system to indicate that there was a train or other obstruction in a block, when in fact there was none; (*ii*) this shunt interfered with a nearby railroad crossing by reducing its activation time by approximately 75%; and (*iii*) the potential repercussions had this shunt continued being operational when a train passed through.

## **THE APPLICABLE LAW**

Reiche is charged with one count of Violence Against Railroad Carriers, and conspiring and attempting to do the same, in violation of Title 18, United States Code, Sections 1992(a)(5), (a)(10), (c)(1), and 2. Violence Against Railroad Carriers has the following elements:

1. The defendant knowingly impaired the operation of a railroad signal system;
2. The defendant did so without lawful authority or permission; and
3. The conduct was against and affecting a railroad carrier engaged in interstate or foreign commerce.

*See* 18 U.S.C. § 1992(a)(5), (c)(1). The government is proposing a special verdict form that will allow the jury to indicate, if they find the defendant guilty, whether they have

*United States v. Reiche*, No. CR 20-215 RSM - 4
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

concluded that she committed the completed crime, a conspiracy, an attempt, or some combination of those three.

## EVIDENTIARY ISSUES

### A. Pending Motion

Pending before the Court is the defense's motion to suppress the defendant's incriminating statements to law enforcement officers prior to her arrest and physical evidence found in a grocery bag that she was carrying at the time of her arrest. An evidentiary hearing in connection with this motion is scheduled for August 17, 2021. The government anticipates calling Deputies Chambers and Streubel at the evidentiary hearing.

### B. The Defendant's Statements

Subject to the Court's ruling on the pending motion, the government intends to introduce evidence of pre-arrest statements made by Reiche or her co-defendant to law enforcement officers. Such statements by a defendant are not hearsay when offered against the defendant. Fed. R. Evid. 801(d)(2). To the extent that any of the statements were made by the co-defendant, the evidence will show that they were adoptive admissions of Reiche. *See* Fed. R. Evid. 801(d)(2)(B); *Transbay Auto Serv. v. Chevron*, 807 F.3d 1113, 1118-21 (9th Cir. 2015); *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985). Additionally, the government will offer some or all of the defendant's statements for their falsity—not their truth. Statements offered for this purpose are not hearsay. *See United States v. Fried*, 576 F.2d 787, 793 (9th Cir. 1978) (stating out-of-court statements not hearsay when offered for their falsity).

Conversely, however, the defendant is not entitled to admit any of her own out-of-court statements. An out-of-court statement of a declarant offered by the declarant on her own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 681-82 (9th Cir. 2000) (affirming a district court's ruling that precluded a defendant "from eliciting his own exculpatory statements, which were made within a broader, inculpatory narrative").

*United States v. Reiche*, No. CR 20-215 RSM - 5
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C. Physical Evidence Seized

Similarly, subject to the Court's ruling on the pending motion, the government will introduce at trial physical evidence obtained from Reiche on the night of her arrest. Law enforcement officers who were present that night will authenticate these items. The government may introduce photographs of the physical items in addition to, or in lieu of, the items themselves. Agents are expected to testify that the photographs are true and accurate depictions of the condition of the items at the time that they were seized.

### D. Testimony by BNSF Signal Supervisor

As mentioned above, a BNSF signal supervisor is expected to testify about how the BNSF railway signal system generally works and how the shunt at issue impacted that system. To the extent that any of this is expert testimony, it is admissible pursuant to Federal Rule of Evidence 702, which provides in relevant part that a "witness who is qualified as an expert" may testify in the form of an opinion or otherwise "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

The decision to admit expert testimony "is very much a matter of discretion with the [trial] court." *United States v. Cordoba*, 194 F.3d 1053, 1056 (9th Cir. 1999). An expert's testimony based upon information obtained other than through personal observation is permissible if it has "a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019) (citation omitted). There will be an ample foundation for admitting the testimony of the signal supervisor, who has worked in the railroad industry for more than 20 years.

### E. Photographs and Maps

The government expects to offer photographs of the location at issue along with maps. These materials are admissible pursuant to Federal Rule of Evidence 901 if a witness with knowledge testifies that the photograph or map is an accurate representation of what it is intended to depict. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir.

*United States v. Reiche*, No. CR 20-215 RSM - 6
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1980) (evidence that photographs accurately depicting scene provided sufficient foundation for admission under Federal Rule of Evidence 901(a)).

**F.    Stipulations**

The government and the defense have discussed possible stipulations to streamline the trial. At this time, no agreement has been reached but that may change. The potential stipulations include:

      1.    That BNSF is a railroad carrier;

      2.    That BNSF engages in interstate commerce; and

      3.    That BNSF engages in foreign commerce.

## **CONCLUSION**

This memorandum is intended to familiarize the Court with the government's case and evidentiary issues related to the trial presentation. The government will supplement this brief as necessary should additional issues arise.

DATED this 16th day of August, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

 /s/ Philip Kopczynski
PHILIP KOPCZYNSKI
SOK TEA JIANG
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-7970
philip.kopczynski@usdoj.gov
sok.jiang@usdoj.gov

*United States v. Reiche*, No. CR 20-215 RSM - 7
Government's Trial Brief

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970